IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERNON MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-2023 (MN) |
| | ) |
| OFFICER LOCKWOOD, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Vernon Montgomery, Pro Se Plaintiff.

Nicholas D. Picollelli, Jr., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants.

January 18, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Vernon Montgomery, ("Plaintiff" or "Montgomery"), an inmate at James T. Vaughn Correctional Center ("JTVCC"), proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 8). He filed his Complaint on October 25, 2019, followed by an Amended Complaint on October 30, 2019. (D.I. 3, 6). The Amended Complaint is the operative pleading. Presently before this Court is Defendants' motion for summary judgment and Plaintiff's motion to clarify his argument. (D.I. 60, 65). Briefing is complete.

I. **BACKGROUND AND FACTS PRESENTED BY THE PARTIES**

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging violation of the Eighth and Fourteenth Amendment rights. Excessive force and deliberate indifference claims against Defendants Officer Lockwood ("Lockwood") and Officer Courtney ("Courtney") survived screening, and all other Defendants were dismissed. (D.I. 12). During discovery, Plaintiff answered Defendants' first set of interrogatories and stated that he also relied upon the Fourth and Fifth Amendments as a basis for relief against Defendants. (D.I. 49). This Court does not considered the claims based upon the Fourth and Fifth Amendments because Plaintiff did not include them in his Complaint or amend the Complaint to add the claims, testified that he did not know if the constitutional amendments applied to his case. Thus, the only claims are excessive force against Lockwood and deliberate indifference against Courtney. (D.I. 49; D.I. 61-1 at 9). Discovery closed on April 30, 2021 and dispositive motions were due by May 28, 2021. (*See* D.I. 51). Defendants timely filed a motion for summary judgment on May 28, 2021.[1] (D.I. 60).

---

[1] Plaintiff's argument that the motion for summary judgment should not be accepted because it was untimely filed is not supported by the record.

1

Plaintiff alleges that on September 3, 2019, when Courtney and Lockwood were collecting laundry at JTVCC, and they went to Plaintiff's cell to return property from a previous search and inform him of a disciplinary write-up. (D.I. 61-1 at 4; 61-2 ¶ 8; 61-3 ¶ 6). Plaintiff asked to see the Sergeant because he was feeling "homicidal and suicidal", and he wanted to see mental health. (D.I. 61-1 at 4; 61-1 ¶ 8; 6-3 ¶ 7). Courtney radioed the Sergeant. (D.I. 61-2 ¶ 8; 61-3 ¶ 7).

After Plaintiff spoke to the Sergeant, Courtney ordered Plaintiff to "cuff-up." (D.I. 61-1 at 2; 61-2 ¶ 9; 61-3 ¶ 8). Plaintiff did not comply with the order. (D.I. 61-1 at 2, 3; 61-2 ¶ 9; 61-3 ¶ 8). Plaintiff said that he needed to use the bathroom and quickly walked to the back of his cell and retrieved an object from his locker box. (D.I. 61-1 at 2, 4, 12; 61-2 ¶ 10; 61-3 ¶ 9). At his deposition, Plaintiff testified that he grabbed an oatmeal bag but that it did not contain oatmeal. (D.I. 61-1 at 4). He would not disclosed the contents of the bag. (*Id*.). Courtney saw Plaintiff move sideways to the toilet while hiding the object from her view. (D.I. 61-2 ¶ 10). She saw Plaintiff fumbling with the object while in front of the toilet and then pour a liquid from the oatmeal bag into the toilet. (D.I. 6-1 at 3, 4; 61-2 ¶¶ 10, 13; 61-3 ¶ 9). Plaintiff testified that he did not expect Courtney to watch him when he approached the toilet because she is a woman. (D.I. 61-1 at 3, 11). Courtney screamed at Plaintiff to stop "dumping shit." (*Id*. at 4). Either immediately before or immediately after Plaintiff dumped the liquid, Courtney told Lockwood to spray Plaintiff with oleoresin capsicum ("OC spray" or "pepper spray") if Plaintiff did not stop what he was doing because it appeared Plaintiff was destroying contraband. (D.I. 61-2 ¶ 11; 61-3 ¶ 10).

Plaintiff turned towards Courtney and Lockwood and Courtney could see that he had dumped an unknown liquid into the toilet from the oatmeal bag. (D.I. 61-2 ¶ 13). The liquid was a very dark shade of purple and appeared to have chunks of an unknown substance in it. (*Id*.).

Based on Courtney's training and experience, Courtney believed that Plaintiff was attempting to destroy prohibited homemade alcohol. (*Id.*).

Lockwood opened the cell flap while Courtney ordered Plaintiff to stop dumping and to step away from the toilet. (D.I. 61-1 at 3; 61-2 ¶ 12; 61-3 ¶ 10). Plaintiff did not comply, attempted to flush the toilet, and ultimately completed the flush. (D.I. 61-2 ¶ 11-12; 61-3 ¶ 11). Lockwood sprayed Plaintiff with his pepper spray because he believed that Plaintiff was attempting to destroy contraband. (D.I. 61-1 at 3, 4; 61-2 ¶ 12; 61-3 ¶¶ 9-11). Delaware Department of Correction Policy 8.30 authorizes the use of chemical agents against inmates who fail to obey orders. (D.I. 61-4 at 1-4).

Lockwood estimates that ten to fifteen seconds passed from the time Plaintiff poured the liquid in the toilet to when he sprayed him and that the entire incident, from Courtney's order for Plaintiff to cuff-up to when Lockwood sprayed him, lasted approximately one minute. (D.I. 61-3 ¶ 12). Plaintiff testified that it happened even more quickly. (D.I. 61.1 at 4, 11, 12).

After Lockwood pepper sprayed Plaintiff, Courtney again told Plaintiff to cuff-up. (D.I. 61-2 ¶ 14; 61-3 ¶ 13). Plaintiff refused because he could not breath and needed to put his face in front of an air vent so that his "air passages could open back up." (D.I. 61-1 at 5, 6; 61-2 ¶ 14; 61-3 ¶ 13). He stated that it felt like he was having an asthma attack. (*Id.*). Plaintiff was eventually secured without further use of force and was escorted from his cell to see medical and mental health. (D.I. 61-2 ¶ 15; 61-3 ¶ 14). Plaintiff was cleared by medical. (D.I. 64-1 at 12).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, this Court

must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Defendants move for summary judgment on the grounds that: (1) they did not use excessive force; (2) the claims are barred by the doctrine of qualified immunity; and (3) the claims against Defendants in their official capacities are barred by the Eleventh Amendment. (D.I. 61). Plaintiff filed two oppositions to the motion and a motion to clarify his response. (D.I. 62, 63, 65). The Court will grant Plaintiff's motion to clarify his response to the extent that Plaintiff's arguments were considered. (D.I. 65).

## III. DISCUSSION

### A. Plaintiff's Procedural Objections

As an initial matter, Plaintiff argues that the motion for summary judgment was not timely filed. (D.I. 62). It was.

Additionally, Plaintiff asks the Court to reopen discovery to obtain a log book from SHU-17 on September 3, 2019, arguing that Defendants' declarations are perjury, and that Defendants never searched his cell and confiscated items used to make alcohol. (D.I. 62, 63). The discovery deadline, however, was April 30, 2021. (*See* D.I. 51). Plaintiff's belated request for discovery will be denied.[2]

Plaintiff also argues that summary judgment is not appropriate because Defendants did not comply with BOP Policy 8.30. (D.I. 63). The failure to comply with any internal prison regulations, however, does not constitute a constitutional violation. *See e.g.*, *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

### B. Excessive Force and Deliberate Indifference Claims

The Court now turns to the deliberate indifference and excessive for claims. In assessing a prisoner's excessive force claim under the Eighth Amendment, courts must focus on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court considers

---

2   In addition, as will be discussed, the log book is not necessary to analyze Plaintiff's claims. Plaintiff contends that Lockwood's report differs from his declaration where Lockwood said he gave multiple orders to step away from the toilet. (D.I. 63, 65). Plaintiff argues that Lockwood did not give any orders. Plaintiff, however, does not dispute that Courtney gave him orders to cuff up and to stop dumping liquid and that she ordered Lockwood to spray Plaintiff if he did not stop dumping the fluid. Whether Lockwood did or did not give Plaintiff any orders is immaterial. It is undisputed that Plaintiff did not comply with Courtney's orders.

5

"several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quotation marks and citation omitted).

Here, the evidence is insufficient for a reasonable factfinder to determine that Lockwood used excessive force or that Courtney was deliberately indifferent. More particularly, Plaintiff refused an order to cuff-up, refused to stop dumping liquid into the toilet, and flushed the toilet to dispose of the liquid. All parties agree that the incident took place in a very short period of time. It is undisputed that Courtney gave orders to Plaintiff and that he did not obey. *See Jones v. Shields*, 207 F.3d 491, 495-97 (8th Cir. 2000) (holding that the use of pepper spray against a prisoner was not a violation of the Eighth Amendment when he had disobeyed a supervisor's order and then questioned a guard's order).

Both Defendants believed that Plaintiff was dumping contraband and Plaintiff's refusal to identify the liquid he flushed down the toilet could lead a reasonable jury to the same conclusion. *See e.g.*, *Cruz v. Webb*, 211 F.3d 1277 (10th Cir. 2000) (spraying inmate with Lysol, taking him to the floor, placing a knee on his back, and restraining him until he could be handcuffed was not excessive force because inmate flushed something down the toilet when he was in a special cell for suspicion of having contraband); *Laureano v. Gray*, 991 F.2d 803 (9th Cir. 1993) (no excessive force when an officer pulled inmate off toilet and stood him against the wall because the inmate was suspected of possessing contraband, flushed a toilet twice while in the presence of the officer, and refused to stop when told by the officer to do so. The force was necessary to prevent possible destruction of evidence even after the inmate flushed the toilet); *Rivera v. Lebron*, C.A. No. 5:15-

cv-317-Oc-10PRL, 2018 WL 11251159, at *6 (M.D. Fla. June 1, 2018) (no excessive force when officers forcefully grabbed and threw inmate to the ground because officers observed inmate's suspicious meeting with a visitor and inmate went to a toilet to flush balloons down it. Inmate claimed that he had already flushed the balloons when he was tackled. The court held, regardless, that "there was a need for force to restrain [plaintiff] to prevent destruction of evidence. . . . "), *rev'd on other grounds*, 824 F. App'x 838 (11th Cir. 2020).

Even considering the evidence in the light most favorable to Plaintiff and excluding any disputed facts for purposes of summary judgment, summary judgment for Defendants is appropriate because the remaining facts are sufficient to establish there was no excessive force under the circumstances. In addition, Plaintiff did not produce any evidence of a discernible injury, and the record indicates that he was cleared by medical. Accordingly, this Court will grant Defendants' motion for summary judgment on the issues of excessive force and deliberate indifference.

### C. Eleventh Amendment

Defendants move for summary judgment to the extent the claims are raised against them in their official capacities. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, § 1983

claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment.  *See id.*

As such, the official capacity claims against Defendants in their official capacities are barred by the Eleventh Amendment, and therefore, they will be granted summary judgment on this issue.

## IV. **CONCLUSION**

For the above reasons, this Court will:  (1) grant Defendants' motion for summary judgment (D.I. 60);[3]  and (2) grant Plaintiff's motion to clarify his argument (D.I. 65).

An appropriate order will be entered.

---

[3] This Court does not address the issue of qualified immunity having determined summary judgment for Defendants is appropriate on other grounds.